Good morning, Your Honors. I'd like to reserve approximately eight minutes for rebuttal, and I will keep track. May it please the Court, my name is Adam Gutride, and I represent the plaintiff's appellants in this case, or actually in these three cases. Your Honors, the District Court concluded that when individual proof of reliance and causation is not required, such as in the statutory damages claim under the Electronic Funds Transfer Act, the class should be certified. However, the District Court mistakenly believed that such proof is required on a Section 17200 claim. Subsequently, the California Supreme Court clarified in the Tobacco II case that there is no such requirement. Accordingly, there is no basis for the District Courts to have denied certification of that claim under Section 17200. Counsel, what do we do with the conflict, at least it seems to me, to be a conflict between state and federal law, with regard to Article III standing and injury requirements under the Constitution, and the California Supreme Court's statutory interpretation of elements of a cause of action? You invoked the jurisdiction of a federal district court both under the Electronic Funds Transfer Act, federal question jurisdiction, but also diversity jurisdiction, did you not? Well, Your Honor, we did in two of the cases invoke federal jurisdiction, and in the other case it was removed. However, I can answer your question directly if you'd like. Yeah, I hope you understood my question. Yes, I did. The answer is twofold. First, there is no conflict between California law and Article III because this Court, all the cases of this Court make clear that the standing requirements of Article III apply only to named plaintiffs, not to class members, and I can go into that in more detail in a moment. But even if there were a requirement under Article III as to absent class members, that requirement would be met here. The cases that this Court should look at were to go down that road would be the Denny case from the Second Circuit and the Cohen case from the Seventh Circuit, which are the two most recent cases from other circuits, as well as we can also look at the Averitt case from the Eighth Circuit. Denny makes clear that while a class should not include people who lack Article III standing, that does not mean that every member of the class has to be able to bring his or her own cause of action. And in fact, in that case, the Court relied on an allegation that all the members of the class paid more than they would have for certain tax advice. That allegation was sufficient to certify the entire class because the named plaintiffs had shown that they had, in fact, done so. And there was no need for an inquiry into what the absent class members would have done. Similarly, Cohen holds that you focus on the class definition and that the definition can steepen people who, in fact, haven't been harmed at all, may have gained by the practice. What's common about this class, Your Honors, this proposed class, is that every single person was, first, exposed to a uniform practice that we allege is likely to deceive reasonable consumers. Second, every single person spent money. When you say uniform practice, my understanding of the record is that the page displays actually changed over time. And I'm not sure the district court focused on this. But what do we do with the fact that members of the class may have been looking at different pages on the website? The evidence in the record, Your Honor, is that the differences in the pages was not as to the substance of what was on the pages. It was changes such as the layout of the pages, the colors of the pages. And there is testimony in the record from our experts that the changes that were made are not material. And there's no contrary argument by the defendants that there was, for example, class member A saw a page that had some disclaimer that class member B did not see. That's not their argument. But the problem you have, as I see it, and I think the district court focused on this, is that she challenged you to cite specific examples of misrepresentations or omissions. And your answer to that, as I understand it, is your experts' inattention theory. Is that right? No, Your Honor, that's not right. Okay. So what's the misrepresentation? We've cited a whole slew of misrepresentations and omissions. But before I go into that, may I just say that California law does not require specific misrepresentation or omission. What it requires is a deceptive practice. That's what's at issue in Tobacco II. It wasn't an issue about whether the defendants had said something specific that was a misrepresentation, but rather whether they had engaged in a practice of misrepresenting the effects of tobacco smoking, of disputing the links between tobacco use and cancer, funding studies that were designed to undermine actual. It was a whole slew of practices all lumped together as a deceptive practice. Okay. But let's get back to the facts of this case. I will, Your Honor. And the problem I'm having, counsel, is I read language on all of those webpages that essentially tell the consumer that you're about to sign up for a trial period that is free for 30 days, but then it costs you somewhere between $7 and $9 a month thereafter. And as I understand your expert's theory, you're not saying that the words weren't there. You're saying the way that it was displayed, maybe using very fine, small font and different colors and so on, that somehow the consumer would be lulled into inattention and would nonetheless twice enter his email address and click continue and all that stuff, but that's inattention. Isn't that your theory? That's part of the expert's testimony. It's the part that the defendants are focused on, but it's not the complete picture of our case. Our case is about a whole series of deceptive acts that occur through the entire process of buying your tickets and going on to be subscribed. I understand the emails and so on also, but let's focus just on what the consumer did in order to sign up. That's where I'm having a problem. What the consumer would have had to do to sign up is to click on a continue button, type their email address twice, and hit the enter key on their computer. That's it. Right. The point is, Your Honor, that that practice is extremely different from most practices of signing up for something that costs money on the internet, and here's what's omitted. There's no place to confirm your credit card number. There's no place to confirm the digits of your credit card number. There's only moving forward buttons. There's no place where you can say, no thanks, I don't want that, go back. None of that exists. When you get to the end, you're not told. They can't just hit the upper X in the corner of the screen and be done with that? You absolutely can, Your Honor. Just get off the internet? One of our plaintiffs said that's exactly what he did. And that worked, right? And when he did that, he already had been subscribed. The problem is that by the time that you… But he had to have entered his email address twice. Email address twice, that's right. Okay. Up to 90% of the people who are subscribed to this service… That's inattention. When he does that and then he hits the X button and he's gone, that's inattention. We would say, Your Honor, that there are many steps along this practice that are deceptive. It's a practice that if you went into a store, for example, and you give your credit card to buy something, and they give you the receipt to sign it, and you sign it, and there's language on there that you're subscribing to something that you didn't know about. That's not a traditional way of being subscribed to something. I guess the problem I'm having with this theory is it's kind of the equivalent of sleepwalking through the Internet. That's how I see it. And that's a very interesting theory, but I'm not sure that's misrepresentation or omission within the concept of… It sort of sounds like what you're saying, Your Honor, is that maybe you, as a fact finder, would not believe this case. No, I'm trying to see how you answer the district court's query about what the misrepresentation or omission was. Well, I would maybe back up from that question to look at Duke's, which was just decided by the Supreme Court. What we have to show under the Walmart versus Duke's case is that there is a question that can be answered. The common answer would then dictate what happens to everyone in the class. The question that we're presenting here that has a common answer is whether this enrollment practice is likely to deceive reasonable consumers. That's an objective test. There's no dispute that that is an objective test, that it is just as objective as the test for statutory damages under the Electronic Funds Transfer Act. So, Your Honor, if we prove to the jury that everyone in this class, 94% of the people who signed up for this thing, say they did not know they were being signed up, they did not know, if we show them all the ways in which this practice is likely to deceive, and they agree with us that this is likely to deceive reasonable consumers, that establishes liability to the entire class under Tobacco II. That is the common answer. If we fail in that showing, then we fail. However, there is clearly a common question presenting a common answer, which resolves the questions for the entire class. Counsel, can I ask one question that kind of goes to the whole thing? The first class you proposed is kind of different from what you said you were willing to reduce it to. Yes. When you're arguing today, are you arguing the first proposed class or the reduced class that the judge refused to let you reduce to? Your Honor, obviously, if the more narrow class is people who have already told the defendants they did not intend to sign up, and that's what it says in the defendant's records. Correct. That class should certainly be certified, even if the broader class is not certified. Okay. Your Honors, I have – would Your Honors like for us to address the dismissal of the CLRA claim, that that should have been without prejudice under the Morgan case? And I have many things I can say, but I don't want to spend time if it's not important to Your Honors. Well, I think we're going to have to let you pick what you think are the most important. You know, we've obviously read your briefs. Thank you. And we have those arguments in mind. Okay. I will say, Your Honors, that the Morgan case has been followed by several district court cases, including Henderson v. Smucker and Doe v. AOL. There are no cases, no recent cases, that say the dismissal should be with prejudice. And certainly, it can't be with prejudice as to the absent class members. I would further say that on the CLRA and fraud cases, we've said that there is an inference of reliance that arises if you show the materiality of the misrepresentation. That is true under the Vasquez case, which has been cited with approval in this court in similar circumstances. But we're back to this, I guess, to the same problem again, which is what's the misrepresentation in order to determine materiality? We still have to have an answer to the primary question. The practice is materially deceptive to reasonable consumers because it does not lead a reasonable consumer to realize that they are being enrolled in a paid subscription service. I'm sorry, Your Honor?  You can go ahead, Your Honor. What is the right question to be asked at this stage of the proceeding? At this stage of the proceeding, we are not concerned, strictly speaking, with the merit of whether a reasonable consumer would indeed be deceived. That's absolutely right. So what are we actually concerned with? How do you phrase that? Under Walmart v. Dukes, you have to determine whether the question that we are presenting to the jury, namely, is this practice likely to deceive reasonable consumers? Is that question subject to a common answer? The answer is yes, it is, because it's an objective test. And if so answered, would that resolve the claims of the entire class? And the answer to that is also yes, because under Tobacco II, the entire class, having been subjected to an unfair trade practice, is entitled to restitution, regardless of whether every single member of the class was individually deceived. Because they were subjected to an unfair practice, they are entitled to restitution. There is no Article III problem with such a holding. As I said before, I would also remind Your Honors of the Yokoyama and the Wolin cases, which, although they do not expressly address Article III, certainly could not have been decided in the way they were, had there been an Article III problem. I also want to cite, to Your Honors, Bates v. UPS, 511F3-974. Judge Reimer, I believe you were a member of the en banc panel in that case, which has not been cited yet. But it says, quote, in a class action, standing is satisfied if at least one named plaintiff meets the requirements. And it goes on to say that because one of the class members has standing to seek relief, the entire federal class has standing. I'm going to reserve the rest of my time. Thank you. Very well. Thank you, Mr. Guthrie. Mr. Brown? Good morning, Your Honors. May it please the Court, Donald Brown of the Nass-Phelps and Phillips, on behalf of the defendants and appellees. I don't think we just heard from Mr. Guthrie the identification of any misrepresentation or omission that's at issue in this case. And I think it makes sense to spend time just for a moment looking at the actual evidence. Judge Tallman, you correctly pointed out that the enrollment pages and the ticket purchase confirmation pages evolved over time. And those do introduce individual issues. And yet every page did make disclosures that really preclude any notion that there's a misrepresentation or omission here. Well, as I understand Mr. Guthrie's answers, because, as you know, we spent a fair amount of time talking about this question, his response to that is he's not quarreling with the actual words that were on the page. It was the way that the pages were laid out that somehow deluded consumers into signing up for the service without realizing that they'd signed up for it. Right. And the problem with that argument is that, number one, that's not even true as to several of the named plaintiffs. John Mancini testified that when he reached the ticket master purchase confirmation page, he understood that his ticket purchase was completed. It wasn't necessary to click on the continue button or anywhere in the rewards program advertisement in order to try to complete his ticket purchase. It was already done. When he clicked on the advertisement, it opened the landing page for the entertainment rewards program. And that's the page where one enrolls. Mr. Mancini testified that he read that advertisement. He understood it. He understood that he was being invited to enroll in a fee-based program. Well, that's why he was eliminated as a representative plaintiff. But that doesn't mean that there aren't other people, for example, Myers, who didn't know what was happening. It seems to me that's shifting the question quite a bit. Their position, it sounds to me, is that, look, whatever you did, you were playing fun and games, and you were burying it. As a result of which, thousands upon thousands of people signed up without knowing they had done it. That's their claim. You're saying, oh, no, that's not true. Just look at our stuff. Look how good it is. And they're saying, well, it is true, and all we have to do is show you there are plenty of people who did it. For example, the continue button. It kind of looked like you didn't know you were going to another website entirely. It said, press here to get a reward. Okay, so you pressed it. That's tricky. No final transaction page at the end that says your transaction at the end of the sign-up. Your transaction is completed. Your account is going to be charged. Nothing like that. Not that separate confirmation page that a lot of people are used to seeing when they get things on the Internet, I believe. A final confirmation page. That's not there either. So they're saying this whole congeries of stuff is enough to mislead an awful lot of people. Isn't that what they're saying? They are saying that, Your Honor, but how does one prove that on a class-wide basis where, in fact, all the material terms were, in fact, disclosed to every consumer? But more importantly, more than 98% of the consumers who finished their Ticketmaster ticket purchase saw this advertisement, this continue button, and never enrolled in the Entertainment Rewards Program. Plainest theory is that this was inherently deceptive. This is the theory that they went with. Maybe you do some discovery and you find out that somebody has been keeping track of what people say when they call in to cancel it. And it's finding, I don't know if this happens for sure, but it's finding that hundreds and thousands of people are calling and saying, Huh? We signed up for what? When they call in to cancel it. Maybe that's one way you show that this really is deceptive. I don't know. The problem is that doesn't necessarily show deception, which is why the individual issues continue to predominate. People could have enrolled and forgotten that they had enrolled. People could not have been paying attention when they enrolled. People could have smoked cigarettes without paying a particle of attention to what the Surgeon General put on the packages. And some of us are kind of amazed that anybody would pick up a cigarette anymore. But you know, there are zillions of people out there who were misled by a whole lot of stuff, allegedly, or so tobacco thought, tobacco 2 thought, right? Here's the difference, Your Honor. In tobacco 2 or any of those cases, we can all identify material information which in fact was either misrepresented or omitted. The tobacco companies denied that smoking was harmful. Whether or not a consumer had some alternate source of information which would tell them that maybe smoking is harmful, that's qualitatively different than the situation here where the defendants disclosed all of the material terms. Some consumers chose to read those terms. Some consumers didn't. So how does one establish on a class-wide basis that every member of the class was deceived when you don't have a material misrepresentation or an omission? And a material misrepresentation or omission is required for any claim based on deception. Based on what? Based on deception. Well, the UCL is kind of broad in that respect, I think. It's broadly worded, Your Honor, but I can't identify a single case, and I don't believe the plaintiffs have either, where a class was certified under the fraud prong under the UCL that did not involve the concealment or misrepresentation of material information. Because without that, there's no way of, again, of establishing on a class-wide basis that each consumer was allegedly harmed in the same way. And this brings me to the recent holding in Wal-Mart v. Dukes. Mr. Guttreid is correct, Dukes, for Rule 23a2 analysis, leaving aside predominance under 23b3. Under 23a2, what the Supreme Court said is there needs to be a common question which, if answered, resolves claims as to the entire class. And it's not sufficient just to say, for example, was the process deceptive? In the same way that the Supreme Court in Wal-Mart said, it's not sufficient to simply pose the question, were all the Wal-Mart female employees exposed to a discriminatory practice? Rather, the question and answer has to be a lot more granular so that in each case, we have an answer as to, in the Wal-Mart case, why was this employee discriminated against? And here, how was this consumer deceived? And without a misrepresentation or omission, but rather some nebulous allegation of a deceptive practice, there is no common question and answer that solves that problem. Now, I'd like to address this issue of the reduced class size that there was discussion about a moment ago. Reducing the class to include only consumers who indicated when canceling that they don't know how they enrolled doesn't solve any of the problems, and the district court explained that. Number one, it still does. I thought the district court said it was refusing to let it be reduced because it didn't think that it covered Myers. No, the district court in one of the subsequent rulings revisited that question, I believe, at the time of BFTA class certification. And what the district court said is the mere fact that someone claimed at the time of cancellation that they weren't aware that they had enrolled wouldn't necessarily show that they were deceived into enrolling. In addition, the records in the Possession of Defendant Entertainment publications show that more than 25,000 consumers who, when canceling, and said as their reason for cancellation that they hadn't realized that they had enrolled, more than 25,000 consumers, in fact, had used the program. They had either downloaded coupons or they had received cash back on a future ticket purchase. So the fact that someone, after the fact, claims that they weren't aware that they had enrolled doesn't mean that they were deceived. In fact, it doesn't even mean that they didn't use the program. So it doesn't solve the problem of not having a class where individual issues do not predominate. So I'd like to discuss for a moment the Article III issue. What the Second Circuit Court of Appeals held in Denny and recently the Eighth Circuit Court of Appeals in Abbott is that a class may not be certified whose members could not assert that cause of action. In addition, this court recently, in its decision in Dukes v. Walmart, recognized that a class must be comprised of members who have standing because this court, in the context of the Rule 23b2 class, removed from the class plaintiffs who were no longer employed by Walmart at the time the lawsuit was commenced because those employees would not have standing to seek injunctive relief. And injunctive relief was what was at issue in the Rule 23b2 class. So several courts, including this one, have recognized that the class members themselves must have standing. And under the UCL, we have an Article III problem. First of all, unlike in federal court, the California Supreme Court in Tobacco II said simply, standing of class members is irrelevant. That may be true in California State Court. It's not true here. Second of all, by essentially removing causation from the calculus, the Tobacco II paradigm for a class has removed one of the three pillars for Article III standing. How does it remove causation? Why do you need to prove reliance to have causation? I'm sorry, Your Honor. Why do you need to prove individual reliance in order to have causation? Let me put it this way. Suppose California has a law that says, I'm not saying you guys did this, if you put out misleading, fraudulent advertisements and such, and consumers see them and purchase, we focus on the activities of the defendant, not the details of the plaintiffs. So, as a matter of California public policy, let's say they said, our rule is that if you put this out, let's call it uniform for a moment, uniform falsity, and consumers see it and buy your product, you've got to make restitution. The end. That's what our cause of action is in California. Okay? Now, what's wrong with that? What's wrong with that, Your Honor, is insofar as you have a class, that includes individuals who did not rely on information. Wait a moment. Wait a moment. You're shifting the question. I'm saying that's what California says our law is, that in this state, if you put out a false advertisement and a consumer sees it and buys, we do not require the consumer to prove that it's your falsity because it's your falsity and you sold a product and that's the way we protect people in this state. Now, that's our cause of action. That's not our standing question. That's our cause of action. All you've got to prove is A and B and you win. Now, I think you're saying, well, gosh, but you can't possibly have Article 3 standing because you can't show causation. But if you read the cases, they don't precisely say that. The Supreme Court hasn't precisely said that. It said you have to connect the damage. You have to connect your claim somehow to what was done and they're doing that. They're connecting them. What's wrong with that? Well, because I think you have to do more than just connect it. For example, this court in Birdsong v. Apple, that involved the putative class action that I caused for causing ear damage. This court held, again, with respect to the names plaintiff who had bought the product, that that named plaintiff didn't have standing because he couldn't show that there had been any harm caused by the defendant's conduct. So causation was one of the bases for finding a lack of standing by that plaintiff. Yes. In other words, I think it makes sense to step back and think what a class action is designed to accomplish. In a class action, you have one person suing for the benefit of all and that relieves the court from having to entertain any number of the same identical actions. And the fiction that's engaged in there is that each person who's a member of that class could, on his or her own, assert that claim. And what the California Supreme Court did in Tobacco II is to eliminate that by expressly enabling a class where the named plaintiff can assert a claim that the class members themselves could not. And what the Supreme Court held in Walmart v. Dukes is that Rule 23 can't be used to eliminate a defense. And by essentially presuming standing for the entire class, in fact, going further and saying that standing is irrelevant, Rule 23 would be used here to deprive the defendant of a constitutional defense against the class members, that is, lack of standing. And that's exactly what the Eighth Circuit Court of Appeal concluded in Averitt. What the Eighth Circuit said is it cannot be consistent with Article III to certify a class where the named plaintiff is asserting a claim, yet the class is comprised of people who may not be able to assert that same claim. And on that basis, the Eighth Circuit found that a class under UCL would not satisfy Article III. Thank you. I'd like to briefly address the discussion of the dismissal of the CLRA claim, whether it's with prejudice or without prejudice. The California Supreme Court has not yet ruled on that issue. Every case prior to the Morgan case that had considered the issue held that the failure to honor the notice requirements under the CLRA for a damages claim required the dismissal of that claim with prejudice, and those claims all cited back to the California Court of Appeals decision in Alford Motor. Morgan gave a briefly discussed, in fact, actually, let me rephrase that. Morgan failed to discuss all that prior precedent and simply said in a conclusive fashion that we don't think that the dismissal should be with prejudice. With that state of affairs in the law, there's no reason to believe that the California Supreme Court would agree with that Court of Appeals decision, and therefore the CLRA damages claim should continue to be dismissed with prejudice. But at the end of the day, Your Honor, it doesn't make a difference. What do you take with prejudice to mean in that context? That nobody else can bring it? Not that anyone else in the world can bring it. But that you can't bring it. That that person can't bring it. That person, individual, can't bring it, right? Well, that person, but also it applies to that lawsuit. To what? To that lawsuit. Oh, I understand. But somebody else could bring another lawsuit and do it. Someone could. Okay. But, Your Honor, that depends how it's done. If it's brought as a simply duplicative lawsuit, which is what happened here, then no, that cannot be done. Depends on what you mean by duplicative, doesn't it? Well, duplicative means same parties, same claims, same general relief.  And you're saying no other possible person could bring it because it would be duplicative? I'm not saying no other person could bring it. But under the circumstances here, with the same counsel to circumvent the district court's ruling, simply found a new plaintiff and asserted the exact same claim, that's the difference. Okay. So, Your Honors, in conclusion, the district court did a rigorous analysis of the Rule 23 factors, found that individual issues would predominate because there's no way of knowing whether the entire class interpreted very clear, plain English disclosures on the landing page, on the Ticketmaster Purchase Confirmation page, the same way. And without a misrepresentation or omission to bind the entire class, there's not a common issue and individual issues predominate. And so we respectfully request that this Court affirm the district court's ruling. Thank you very much, Mr. Brown. Thank you, Your Honor. Mr. Gottfried, I think you have some time left. I'm sorry? Mr. Gottfried, I was just saying Mr. Gottfried had some time left. Sorry. Thank you, Mr. Brown. Thank you, Your Honor. I'd like to start with the question that Judge Fernandez posed a few moments ago, which was the hypothetical if the California legislature were to say that you say something deceptive and people buy the product, everyone can get restitution, what's wrong with that? In fact, that's what the legislature has done. This Court has approved exactly that state of affairs under a Hawaii statute in the Yokoyama case. And so we're beyond whether that's acceptable or not. It's perfectly fine for California to offer restitution to people who have been exposed to a deceptive practice, even if such persons could not show individual reliance on that practice. Going back then to- That still poses the problem I asked you about at the beginning, which is the conflict with federal jurisprudence on Article III standing, does it not? It does not, Your Honor, because there is no reliance test under Article III. But there has to be a relationship that establishes injury. There has to be an injury that's traceable and regressible. That's the Lujan standard. So what's the injury? The injury is being exposed to an unfair practice. The statute says that's the injury. Cantrell, which is a decision of this Court, says that the state legislature is free to define injuries. How is it traceable? It's traceable to what the defendants did. They put this practice out. There's no dispute that everyone went through the same uniform practice. Is it regressible? Yes, it's regressible because everyone gets restitution. But your argument, as I understand it, is there is a statement that the producer makes, which is deceptive on its face, and there is conduct by consumers buying the product. But under your interpretation of the California UCL, which I think is correct, there doesn't have to be any causation between the deceptive statement and the decision to purchase the product. And that's where you're losing me on the Lujan test for the three elements of Article III standing. Lujan does not require causation in the way that you just described it, in other words, as an element. It requires traceability and regressibility. Yeah, but traceability to what? By your definition, it's not traceable to the deceptive statement. It absolutely is. There is no way that these people could have lost their $9 per month had they not gone through this practice. There is no other way for them to be losing that money besides going through the practice that we claim is likely to deceive reasonable people. But under your theory and under my pejorative term, if they're sleepwalking through the Internet and they end up entering their email address twice and hitting the continue button, they're signed up, that would be sufficient injury, even if they had absolutely no recollection when they woke up the next morning that they'd done it. It is, Your Honor, only because we can show that this practice is likely to deceive reasonable consumers. If you have a practice that is not likely to deceive reasonable consumers, then there would be no claim. So this class is composed not of actual people who were injured, but a hypothetical class of reasonable consumers. No, Your Honor, it's composed of all persons who spent the money, who never used a coupon, who never got a cashback reward, who were enrolled through this process that we allege to be likely to deceive reasonable consumers. But the part you're skipping is did they see it? Did they just see the webpage? I think in Judge Tolman's example, they didn't even see the webpage. That might be a distinction, but I don't know that you have to go there. It's not possible to click a button and put your e-mail address into a webpage unless you can see it. If the guy is sleepwalking. Oh, okay, Your Honor. If it's possible to, you have to be a very talented sleepwalker. None of the cases bar certification. There are, I'd also like to refer Your Honors to Extractive Record page 252, which addresses Judge Fernandez's point about what evidence we're going to be able to show. It's defendant's own document saying the reasons people called the counsel and what they say. We know that over 90% of the people said they never knew they were subscribing, that everyone in the class, which is 94% of all enrollees, never used it. We know that they tested other practices. They went through many, many different versions, and they rejected all the ones that decreased the enrollment rates because they were left to suffer. Let me stop you. I think Judge Reimer was trying to ask a question a little earlier. I'm sorry. Thank you. Is your theory that reasonable consumers would have believed they were still completing the form to get the ticket? Some reasonable consumers would have believed that, Your Honors. Others may have known that they were finished with the ticket purchase, but they would not have known that they were paying for a new service that was going to bill them every month. There are a variety of ways that this process is likely to deceive reasonable consumers. They don't have to have a common reason in order for there to be a predominance. A common reason why it's likely to deceive them? Yes. No, Your Honor. I don't think so any more than in the Tobacco II case. You need to have a common reason. You have different representations being made by a whole bunch of tobacco companies or different omissions being made, and different people are going to be affected differently by them. However, the overall practice is likely to deceive, and that is what creates the ability to go forward as a class action. I see I'm out of time. You are out of time. Thank you very much. Thank you, Counsel. I appreciate the argument on both sides. The case just argued is submitted, and we'll get you an answer as soon as we can. We are adjourned.
judges: Fernandez, Rymer, Tallman